**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| MICHELLE DAVIS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:16-cv-3079 |
| TOYOTA MOTOR CREDIT CORP., *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendant, Toyota Motor Credit Corporation ("TMCC"), by and through its attorneys, Council, Baradel, Kosmerl & Nolan, P.A., Michael N. Russo, Jr. and Matthew J. Bernhardt, and pursuant to Federal Rule 12 (b)(6), moves this Court to dismiss all claims against it in the Complaint filed, and for reasons states as follows:

## I.     <u>INTRODUCTION</u>

The Plaintiff, Michelle Davis ("Davis"), contends that TMCC is liable under various purported causes of action, arising from the repossession of her motor vehicle by co-defendants in this case, but on the face of her pleading, all of the following bars any recovery against TMCC:

- there is no dispute that Davis was in default on her loan obligations, or that TMCC was entitled to enforce its lien interest against the Vehicle (*infra*);

- the only allegations of any actual wrongdoing are lodged against co-defendants, independent contractors for whose actions TMCC is not liable;

1

- Davis seeks relief for at least one cause of action that does not exist as a matter of law; and

- Davis seeks relief for causes of action that are barred by the applicable periods of limitations.

As against TMCC, the Complaint amounts to nothing more than a series of allegations against *other people*, in relation to a repossession to which TMCC was entitled as a secured lender.

It should be dismissed as against TMCC, <u>with prejudice</u>.

## II.      STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On September 6, 2016, Davis filed a nine-count Complaint, seeking $1,000,000 in actual damages and $2,500,000 in punitive damages, for what she contends to have been unlawful conduct in the repossession of her motor vehicle. (Dkt. # 1.)  Her claims include: "Breach of Peace in Seizing the Vehicle" (Count One); Conversion (Count Two); Violation of Credit Grantor's Closed End Credit Provisions (Count Three); Violation of Maryland Consumer Debt Collection Act (Count IV); Violation of the Maryland Consumer Protection Act (Count Five); Trespass to Chattels (Count Six); Assault (Count Seven); Battery (Count Eight); and Intentional Infliction of Emotional Distress (Count Nine).  *Id.*

In pertinent part, the Complaint includes the following allegations:

While Davis' purported claims arise from the Vehicle repossession, there is no dispute that Davis defaulted on her payments on the vehicle, a 2012 Toyota Camry ("Vehicle"), for which TMCC was the lender and lienholder. *See* Complaint ¶ 25, 27, 29.

Upon the Plaintiff's default, TMCC retained the services of Co-Defendant Complete Auto Recovery Services ("C.A.R.S.") to effectuate the repossession of the Vehicle. *Id.* at ¶ 29.

An employee of C.A.R.S., Charles Moor (hereinafter "Moor"), located and later repossessed the Vehicle. *Id.* at ¶ 17.

Davis alleges that when Moor first attempted the repossession, he caused damage to the Vehicle, and that when she confronted Moor, he responded by assaulting her. *See* Complaint ¶ 34, 36-46. As alleged, Moor then retreated from the Vehicle, but later returned with Co-Defendant Stewart Gray ("S. Gray"), another employee of C.A.R.S., to help complete the repossession. *Id.* at ¶ 48-51.

Nearly three years later, Davis filed this instant lawsuit. Pointedly, her Complaint does not include any allegations of actual misconduct by TMCC, only by individuals/entities she claims to have been acting "in response to TMCC's request" for a repossession of the Vehicle. *See* Complaint, *e.g.* ¶¶ 23-57 ("Factual Allegations").

## III.   STANDARD OF REVIEW

In order to satisfy Rule 12(b)(6), the complaint must be more than a "formulaic recitation of elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a Plaintiff is not required to "establish a prima facie case in [her] complaint, the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). The complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Wilkerson v. New Media Tech. Charter School, Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Although "detailed factual allegations" are not required to withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added)

(quoting *Twombly*, 550 U.S. at 570); *see also Nat'l Ass'n for the Advancement of Multijurisdiction Practice (NAAMJP) v. Lynch*, 826 F.3d 191, 195 (4th Cir. 2016). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.*

Davis has not met that minimal burden of pleading, entitling TMCC to be dismissed from this case.

## IV.   ARGUMENT

Davis fails to state any viable claim against TMCC, whom she concedes to have lawfully sought repossession of the Vehicle, given her admitted default.  On its face, the Complaint fails to state a claim against TMCC because:

A.  Davis cannot hold TMCC vicariously liable for the actions of the Co-Defendants, without alleging an agency relationship between TMCC and those parties. At most, and as alleged, C.A.R.S. and its employees were independent contractors;

B.  Davis alleges no wrongful conduct directly by TMCC, and she tacitly acknowledges that she defaulted on her monthly payment obligations – which is to say, the repossession was not, in itself, objectionable; and

C.   Finally, Count One of the Davis's claim is not a recognizable civil cause of action in Maryland and, even if it was, it would be time-barred, as is Count Seven.

**A.** **The Lack of an Agency Relationship Precludes Davis's Claims against TMCC (All Counts)**

Davis' claims against TMCC fail as a matter of law because they are predicated on the alleged wrongdoing of Co-Defendants C.A.R.S., and/or S. Gray, where the Plaintiff has failed to articulate any colorable basis for this Court to find an agency relationship between TMCC and those parties. *See, e.g., Columbia Town Center Title v. 100 Investment Ltd.*, 203 Md. App. 61, 93, 36 A.3d 985 (2012), *aff'd in part, rev'd in part,* 430 Md. 197, 60 A.3d 1 (2013) (noting rule of law that "For a principal to be liable for the tortious acts of its agent, the relationship must be one of master and servant, and the servant must be acting in the scope of the agency agreement."). The relationship between TMCC and C.A.R.S., as minimally alleged (and thereby tacitly acknowledged) in the Complaint, precludes TMCC from liability as to all counts. This Court has examined the nature, and elements necessary to establish, an agency relationship as follows:

> An agent's function is to represent the rights of the principal. An agent's authority is limited by the instructions, restrictions and needs of the principal.
> *Penowa Coal Sales Co. v. Gibbs & Co.,* 199 Md. 114, 119, 85 A.2d 464, 467 (1952); *Proctor v. Holden,* 75 Md. App. 1, 20, 540 A.2d 133, 142; *cert. denied, Holden v. Freeman & Kagan,* 313 Md. 506, 545 A.2d 1343 (1988) ("Three elements are integral to any agency relationship: <u>(1) the agent is subject to the principal's right of control, (2) the agent has a duty to act primarily for the benefit of the principal, and (3) the agent holds a power to alter the legal relations of the principal.</u>"). *Walton v. Mariner Health of Maryland, Inc*., 391 Md. 643, 654–55, 894 A.2d 584, 591 (2006). An agency relationship is established either by written agreement or by inference. *See Green v. H & R Block, Inc.,* 355 Md. 488, 735 A.2d 1039 (1999); *Patten v. Board of Liquor License Com'rs of Baltimore City,* 107 Md. App. 224, 667 A.2d 940 (1995). Plaintiff has presented no express language from the Agreement to demonstrate the existence of an agency relationship. Plaintiff does not cite to any authority which supports its argument that the Agreement in question created an agency relationship.

5

<u>If no written agency agreement exists, the following factors must be examined to determine whether an agency relationship exists: (1) the agent must be subject to the principal's right of control, (2) the agent must have a duty to act primarily for the benefit of the principal, and (3) the agent must hold the power to alter the legal relations of the principal.</u> *See Patten,* 667 A.2d at 947; *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 498 (4th Cir. 1998). Plaintiff has the burden of proving the existence of an agency relationship. *See Spencer v. Hendersen-Webb, Inc.,* 81 F. Supp. 2d 582 (D. Md. 1999); *State v. Cottman Transmissions Systems, Inc.,* 86 Md. App. 714, 587 A.2d 1190 (1991).

*Huntington Mortg. Co. v. Mortgage Power Fin. Services, Inc.,* 90 F. Supp. 2d 670, 674, 2000 WL 306976 (D. Md. 2000) (emphasis added), *aff'd sub nom.*; *Huntington Mortgage Co. v. Sherman*, 3 Fed. Appx. 126, 2001 WL 127642 (4th Cir. 2001). None of these elements have been addressed, much less established on the face of the Complaint in this case.  To the contrary, Davis alleges only that "in response to…TMCC's request, Moor, as employee and/or agent of C.A.R.S., went to Plaintiff Davis' home…to repossess Plaintiff's Vehicle."  Complaint, ¶ 30. There are no facts alleged of any direct control or direction by TMCC over the manner in which C.A.R.S. would repossess the Vehicle, or who C.A.R.S. would employ to do so.  *See* Complaint, *in general*. There is no suggestion that C.A.R.S., Moor, or S. Gray, owed a duty "to act primarily for the benefit of" TMCC.  *Id.*  There are no allegations (nor could there be) that Moor or the Co-Defendants had "the power to alter the legal relations" of TMCC.  *Id.*  TMCC submits that there are no such allegations, in part, because there is no such relationship between the party Defendants – but in any event, none has been alleged, and that is the test under Rule 12(b)(6). *Supra*.

Instead, what can be gleaned from the Complaint is that C.A.R.S., and its alleged employees Moor and S. Gray, were acting as an independent contractor when it effected the repossession at issue.  "An independent contractor is a person who contracts with another to do something for him <u>but who is not controlled by the other nor subject to the other's right to</u>

control." *Snyder v. Hampton Industries, Inc.*, 521 F. Supp. 130, 142 (D. Md. 1981) (emphasis added).[1] C.A.R.S. and their employees Moor and S. Gray's status as an independent contractor applies to all Counts in the Complaint and, as a matter of law, TMCC is not liable for the actions of an independent contractor.  *See Kersten v. Van Grack, Axelson, Williamowsky, P.C.*, 92 Md. App. 466, 608 A.2d 1270 (1992) (holding that a party is not liable for acts of independent contractor).

### B.      Davis Fails to Sufficiently Allege Any Violation of the Substantive Counts

#### (1) There is No Such Thing as a Civil Claim for "Breach of Peace in Seizing the Vehicle" (Count #1)

Davis's purported cause of action for "Breach of Peace in Seizing the Vehicle" has no basis in statute, common law, or precedent; it very simply does not exist.  Davis has failed to allege facts that, even if proven, would establish a newly recognizable civil cause of action under Maryland law; instead, Davis offers nothing more than a reiteration of the other causes of actions in the Complaint.  Without identifying any legal basis for the claim, or any harm separate and distinct from the harm alleged in those recognized causes of action, Davis has failed to plead a cause of action in Count One for which any relief can (or should) be granted by this Court.

To whatever extent Davis may attempt to "create new law" in reliance on "arguably" analogous statutory law, the closest analogy would be to § 10-201 of Maryland's Criminal Law

---

[1] This Court has found that even where some degree of "control" is allowed by, as necessary to complete the contract, an independent contractor relationship may be found:

> An employer has a right to exercise control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee.

*Schramm v. Foster*, 341 F. Supp. 2d 536, 545 (D. Md. 2004) (quoting *Taylor v. Int'l Union of Journeymen Horseshoers*, 353 F.2d 593, 596 (4th Cir. 1965)). Even if this Court finds that the Complaint alleges some element of control, there are no facts alleged that the control would rise beyond that which is allowed for by an independent contractor. *Supra*.

Article, but it is clear that that statute establishes *a misdemeanor criminal charge*, not a private cause of action. Md. Code Ann., Crim. Law § 10-201.[2] But even if this Court was inclined to consider a "new" civil cause of action in this routine repossession matter, based on that criminal code provision, what is equally clear is that any such claim would be time-barred in this specific action. *See* Md. Code. Ann., Cts. & Jud. Proc. § 5-106 (establishing, subject to exceptions inapplicable to this matter, that prosecution for a criminal misdemeanor must be instituted within one year of the offense).  As Davis pleads, the repossession action took place on October 21, 2013, whereas the Complaint was not filed until September 6, 2016.

### (2) Counts #2 and #6 – Conversion, and Trespass to Chattels, Fail Because There is No *Wrongful* Possession of the Davis's Vehicle

Fatal to these two counts is this one, undisputed fact: TMCC was entitled to repossess the Vehicle, because Davis defaulted on a purchase money loan secured against that car. *See e.g.* Complaint, ¶ 25-30; *see also* Md. Code, Comm. Law, § 12-1021 (establishing secured lender's right to repossess tangible personal property securing a loan "if the consumer borrower is in

---

[2] While assault charges were filed by Davis and her family against Moor and by Moor against Davis and her family, each charge was dismissed by the State when all parties invoked their 5th Amendment rights against self-incrimination and refused to testify. Md. Code Ann., Crim. Law § 10-201, states, in relevant part:

(c)  Prohibited. –

    (1)  A person may not willfully and without lawful purpose obstruct or hinder the free passage of another in a public place or on a public conveyance.

    (2)  A person may not willfully act in a disorderly manner that disturbs the public peace.

    (3)  A person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace.

    (4)  A person who enters the land or premises of another, whether an owner or lessee, or a beach adjacent to residential riparian property, may not willfully:

        (i)  disturb the peace of persons on the land, premises, or beach by making an unreasonably loud noise; or

        (ii)  act in a disorderly manner.

    (5)  A person from any location may not, by making an unreasonably loud noise, willfully disturb the peace of another:

        (i)  on the other's land or premises;

        (ii)  in a public place; or

        (iii)  on a public conveyance.

    (6)  In Worcester County, a person may not build a bonfire or allow a bonfire to burn on a beach or other property between 1 a.m. and 5 a.m.

(d)  Penalty. --  A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 60 days or a fine not exceeding $ 500 or both.

default").   Davis acknowledged default legally entitled TMCC, as a matter of contractual agreement and statutory law, to repossess the Vehicle, which it did.   Regardless of any tort claims against C.A.R.S., and/or S. Gray, the event of a repossession was not, in itself, a wrongful "Conversion" or "Trespass to Chattels." *See, e.g.,* Complaint ¶ 62-70, 90-92.[3]

Without any legal support, Davis would apparently have this Court determine that the alleged "breach of peace," stemming from her allegations of an altercation with C.A.R.S. and S. Gray during the physical act of repossession, somehow negated TMCC's right (as a secured lender) to take possession of the collateral (the Vehicle) after a default. That is wrong.  Davis has failed to allege that TMCC, C.A.R.S., or Moor acted without justification in the repossession of the vehicle; to the contrary, she has alleged that there was a lawful basis for that repossession. *Supra*. Because there was <u>no</u> <u>wrongful</u> repossession, there was no tortious conversion or trespass to chattels.  Counts Two and Six must be dismissed. See *Saunders v. Mullinix*, 195 Md. 235, 240, 72 A.2d 720, 722 (1950) (holding that a conversion occurred when the seller of a vehicle improperly obtained possession of the vehicle from the purchaser).

### (3) Davis' Allegations Regarding "Collection Agency Law" Have Nothing to Do With the Repossession Effected by C.A.R.S., an "<u>Enforcer</u>" of Credit Obligations

Further, the Davis's implication that a failure by C.A.R.S. to register with the State Department of Assessments and Taxation or lack of licensing as a collection agency/repossession

---

[3] As defined in *Interstate Insurance Company v. Logan*, 205 Md. 583, 588-89, 109 A.2d 904 (1954), conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Trespass to chattels is merely a lesser charge than conversion. *Darcars Motors of Silver Spring v. Borzym*, 150 Md. App. 18, 41, 818 A.2d 1159, 1172 (2003) ("If the use or interference is substantial enough, the court may find a conversion. If it is not, the…defendant will be liable at most for a trespass to chattels."). A trespass is defined as an "intentional use or intermeddling with the chattel in possession of another." *United States v. Arora*, 860 F. Supp. 1091 (D. Md. 1994). To understand when a trespass to chattels does not rise to the level of conversion, the court must look at the intent of the person and the duration of possession. *Darcars Motors*, 150 Md. App. at 41, 818 A.2d at 1172 ("In this setting the defendant's intent or bad faith becomes important, along with the duration of the interference.").

agency, somehow invalidated the otherwise lawful repossession of Davis's Vehicle, is again incorrect as a matter of law. Even assuming, *arguendo*, that C.A.R.S. was an agent of TMCC (it was not), and even if C.A.R.S. was not licensed as a "collector" under Maryland law, Davis's position is belied by the black-letter text of the applicable statutes. A repossession agent, such as C.A.R.S., is defined as an "enforcer" of credit obligations, not a "collector" or "collection agency." Md. Code Ann., Bus. Reg. § 7-101. There are no controlling Maryland statutes, regulations, or case law that support the assertion that a repossession agent is considered a "collector" and requires licensing with the State.

Similarly, under the Federal Fair Debt Collection Practices Act (which is similar in all respects to the Maryland Consumer Debt Collection Act except that it is a strict liability statute), 15 U.S.C. § 1692 et seq., a repossession agent is an "enforcer" of credit who is engaged after collection agency efforts have failed, but still is not considered a "collector." That a repossession agent is not considered a "debt collector" for purposes of that statute, under the majority rule, was examined by the United States District Court for the District of Delaware, as follows:

> In contrast to a debt collector, an enforcer of a security interest with a "present right" to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns. Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property. Accordingly, the evil sought to be regulated by the FDCPA, i.e., harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a "present right" to the secured property.

*Jordan v. Kent Recovery Services, Inc.*, 731 F. Supp. 652, 658 (D. Del. 1990). That reasoning is equally applicable to the issue presented herein: a repossession agent is merely an "enforcer," and one that requires no licensing as a "collector" under any Maryland statutes regarding

collection agencies. As with Count One, Davis's claim just is not a recognizable cause of action, for which relief can be granted by this Court.

> **(4) Count #3 - TMCC Did Not Violate the Credit Grantor's Closed End Credit (CLEC) Through its Use of an Independent Contractor to Effectuate Repossession of the Vehicle and Davis's reliance on § 1018 is Misguided**

Davis's demand for treble interest payments, fees and charges collected, under the Credit Grantor's Closed End Credit (CLEC), reflects a fundamental misunderstanding of that legislation. *See* Complaint, ¶ 77. Credit grantors are authorized, under Md. Code Ann., Comm. Law § 12-1021(a)(2)(ii), to "repossess tangible personal property from a consumer borrower only by: self-help, without use of force." The code also states that "[n]othing in this section authorizes a violation of criminal law." Md. Code Ann., Comm. Law § 12-1021(b).   Davis alleges that during this repossession an impermissible breach of the peace took place.  She then posits that due to a breach of § 12-1021, she is entitled to relief called for under § 12-1018. There is no basis for this jump in logic; § 12-1018 provides, as follows:

> **§ 12-1018. Civil remedies**
> (a)(1) In this subsection, "notice" means the first to occur of the following:
> (i) When the credit grantor receives a written notice from the borrower notifying the credit grantor of an error or violation;
> (ii) When the credit grantor receives a written notice from the Commissioner of Financial Regulation or the appropriate regulatory authority notifying the credit grantor of an error or violation; or
> (iii) When the credit grantor receives service of process in a civil action for an error or violation instituted by the borrower in a court of competent jurisdiction.
> (2) Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.
> (3) The penalty provided under paragraph (2) of this subsection does not apply where a credit grantor:
> (i) Unintentionally and in good faith fails to comply with § 12-1003, § 12-1004, § 12-1005, § 12-1008, § 12-1011, § 12-1013.2, § 12-

1023(d), § 12-1024, § 12-1025, § 12-1026, § 12-1027, or § 12-1028 of this subtitle; and

(ii) Corrects the error or violation and makes the borrower whole for all losses, including reasonable attorney's fees and interests, where appropriate, within 10 days after the credit grantor receives notice of the error or violation.

(4) The burden shall be on the credit grantor to show that the credit grantor's failure to comply with § 12-1003, § 12-1004, § 12-1005, § 12-1008, § 12-1011, § 12-1013.2, § 12-1023(d), § 12-1024, § 12-1025, § 12-1026, § 12-1027, or § 12-1028 of this subtitle was unintentional and in good faith.

(b) In addition, a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

*See* Md. Code Ann., Comm. Law § 12-1018 (West).

Davis's claims are similar to those asserted in the matter of *Bediako v. American Honda Finance Corp.*, 537 Fed. Appx. 183, 2013 WL 3943183 (4th Cir. 2013). In *Bediako*, Plaintiff made claims "premised on a violation of the CLEC provisions requiring notice before a creditor may sell collateral securing a loan. If a creditor violates the CLEC notice requirements, it 'may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.'" CLEC § 12–1018(a)(2); *Bediako v. Am. Honda Fin. Corp.*, 537 Fed. Appx. 183, 186, 2013 WL 3943183 (4th Cir. 2013). Further, "[i]n addition, CLEC section 12–1021(k)(4) provides, in the case of certain notice violations, that "the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." *Id.* "Bediako maintains that the district court improperly dismissed her claims for failure to allege actual damages because CLEC entitles her to relief without proving actual damages." *Id.*

This case has many similarities to the *Bediako* case in that this Plaintiff appears to be making the same misguided argument that she is somehow entitled to relief under § 12–1018. *Bediako* holds in pertinent part as follows:

> Section 12–1018(a)(2), by its plain terms, limits a debtor's relief under CLEC to any amounts paid in excess of the principal amount of the loan. As the district court aptly noted, all of Bediako's payments, plus the amount Honda Finance recovered in the private sale of her automobile, fall far short of the original principal amount of the loan.[1] Unlike the Fair Debt Collection Practices Act, which, as Bediako notes, provides for statutory damages as long as the claimant can establish a violation, 15 U.S.C. § 1692k(a)(2), CLEC does not provide for any fixed statutory damages beyond the plaintiff's actual loss. To the contrary, CLEC section 12–1018(a)(2) expressly permits creditors to recover the principal amount of a loan. Accordingly, Bediako has no right to monetary relief under section 12–1018(a)(2).

*Id.* at 186–87.

The appropriate remedy under Md. Code Ann., Comm. Law § 12-1021 would be, if applicable, as follows: "if the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, **the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement**." Md. Code Ann., Comm. Law § 12-1021(k)(4) (emphasis added).   Restated, the only relief sought by Davis is not available under the statute that she presumably relies upon, and as such, that demand for relief against TMCC must be dismissed.

### (5) Counts # 4 and #5 - The Maryland Consumer Debt Collection Act (MCDCA) Cannot be Violated by an "Enforcer," and the Violation of the Maryland Consumer Protection Act Fails as a Derivative Action

TMCC did not violate the Maryland Consumer Debt Collection Act (MCDCA) as unlicensed repossession agents.   First, any actions taken by Moor and C.A.R.S. during the repossession were taken as independent contractors working as "enforcers", precluding TMCC

from any liability.  *Supra*. Second, the MCDCA did not govern C.A.R.S. actions either.  The MCDCA states that a "collector" may not, while collecting or attempting to collect debt, "1) use or threaten force or violence, 7) use obscene or grossly abusive language in communicating with debtor or a person related to him; 8) claim, attempt, or threaten to enforce a right with knowledge that the right does not exist" and more. MCDCA § 14-202(1), (7), (8).  As discussed above in section III. B., C.A.R.S. was retained as an "enforcer" and not as a "collector."

The MCDCA defines a collector as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Comm. Law § 14-201. The MCDCA was enacted to "proscribe certain methods of debt collection" and "focuses on the conduct of the debt collector in attempting to collect on the debt." *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012). While C.A.R.S. may recover the possession of the collateral for which the debt stems from, they are not collecting or attempting to collect the actual debt.

Even if the Court were to find an agency relationship between C.A.R.S. and Moor, the Plaintiff would still have failed to allege facts sufficient to establish that Moor violated Md. Code Ann., Comm. Law § 14-202(7) and (8). Davis fails to plead sufficient facts supporting that the alleged "obscenities" used by Moor were "more than merely abusive, [but] language that is 'flagrantly' or 'greatly' abusive." *Dick v. Mercantile-Safe Deposit & Trust Co.*, 63 Md. App. 270, 279, 424 A.2d 674, 679 (1985). It is impossible to know what level the alleged language would have risen to, as Davis has failed to describe the language in any detail at all, thus failing to satisfy the *Iqbal* and *Twombly* standards. MCDCA § 14-202(7). *Iqbal*, 129 S. Ct. 1937; *Twombly*, 550 U.S. 544. Davis also fails to explain in what way Moor claimed, attempted, or threatened to enforce a right that did not exist.

Further, the Maryland Consumer Protection Act (MCPA) is a derivative cause of action which is invoked in this instance only upon a violation of the MCDCA. Davis bases her alleged violation of MCPA § 13- 301(14)(iii), "violation of a provision of: Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act (also known as MCDCA § 14-201, *et seq.*)." Because TMCC did not violate the MCDCA, it cannot be found to have violated the MCPA. *Supra*.

### (6) Count # 7 - Assault is Barred Due to Statute of Limitations

In order to maintain a cause of action for assault, a claim "shall be filed within one year from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-105. The alleged assault took place on October 21, 2013 and the Complaint was filed on September 6, 2016, almost three years following the date of the alleged incident. Davis is therefore barred from attempting to pursue this claim and this count must be dismissed.

### (7) Count #8 - TMCC is Not Liable for Battery Due to Lack of Agency, or in the Alternative, Actions Taken Outside the Scope of Employment by Moor

First, TMCC is not liable for the actions of independent contractors with whom there was no agency relationship, including the alleged battery[4] perpetrated by Moor, in his employ with C.A.R.S. *Supra*.   If there is no agency relationship, there is no liability on behalf of TMCC for Moor's actions. *Supra.*

Second, even if this Court were to find that Plaintiff has adequately pled such an agency relationship between TMCC and C.A.R.S. (and thus its employee Moor), it is clear that the alleged battery would be outside the scope of any such agency relationship.  TMCC could not be

---

[4] Battery is "a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 Md. 593, 600, 735 A.2d 1096 (1999) (citing Restatement (Second) of Torts § 13). Davis alleges that Moor hit her with a metal object, as well as pushed down her down twice. *See* Complaint ¶ 40, 41, 45. Davis fails to allege the necessary agency relationship between Moor, C.A.R.S, and TMCC.

found liable for an individual's actions that are beyond the scope of his agency. *See Burkowske v. Church Hospital Corp.*, 50 Md. App. 515, 520, 439 A.2d 40, 43 (1982) (quoting *City Bank of Baltimore v. Bateman*, 7 H. & J. 104, 108 (1826) ("an agent cannot bind the principal beyond the scope of authority delegated to him")). To determine whether conduct is within the scope of employment, this Court should look to see if "the conduct of the servant is unprovoked, highly unusual and quite outrageous" which tends to show "'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct [is] outside the scope of employment." *Sawyer v. Humphries*, 322 Md. 247, 257, 587 A.2d 467, 471 (1991) (quoting Prosser and Keeton on the Law of Torts § 70, at 506 (5th ed. 1984)).

While Maryland usually submits questions of whether or not a person's complained of acts are within the scope of their employment to the jury, "this is so, only if there is a factual dispute." *Drug Fair v. Smith*, 263 Md. 341, 283 A.2d 392 (1971). If there is "no conflict in the evidence relating to the question and but one inference can be draw therefrom, the question is one of law for the court." *Rusnack v. Giant Food, Inc.,* 26 Md. App. 250, 265, 337 A.2d 445, 454 (1975) (quoting *Globe Indemnity Co. v. Victill Corp.*, 208 Md. 573, 585, 119 A.2d 423, 429 (1956)). The alleged actions taken by Moor during the justified repossession of Davis's Vehicle were so far beyond the scope of his employment that TMCC cannot be found liable for his actions, even if this Court is persuaded that TMCC and C.A.R.S. have an agency relationship, and this Count must be dismissed.

### (8) Count # 9 - Davis Fails to Sufficiently Plead Intentional Infliction of Emotional Distress

There are no allegations from which this Court could find a prima facie clam of I.I.E.D. against any of the named Defendants (or anybody else, for that matter). In Maryland, the threshold to sufficiently plead intentional infliction of emotional distress is a high bar, and

Davis's allegations fall short. Claims that attempt to allege intentional infliction of emotional distress are "rarely viable in a case brought under Maryland law." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (quoting *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001)).  Intentional infliction of emotional distress is shown by four elements:

1) The conduct must be intentional or reckless;
2) The conduct must be extreme and outrageous;
3) There must be a causal connection between the wrongful conduct and the emotional distress;
4) The emotional distress must be severe.

*Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977). Davis attempts to allege that Moor's behavior during the repossession of her Vehicle, including Moor's language and actions, were intentional, reckless, extreme and outrageous, yet she never specifies which actions or how they fit into said categories. Davis also fails to fully demonstrate her alleged "severe and extreme emotional distress."

When reviewing the Complaint, it is difficult to determine what actions Davis is alleging constitute the "conduct" necessary to determine whether or not there was an intentional infliction of emotional distress. Without this distinction, it is impossible to say that Davis has sufficiently alleged there was a causal connection, or that the conduct was extreme and outrageous, or at the very least intentional or reckless. Furthermore, "[a]ny ambiguity or want of certainty in [the] allegations must be construed against the pleader." *Read Drug & Chem. Co. v. Colwill Constr. Co.*, 250 Md. 406, 416, 243 A.2d 548, 555 (1968).

Even if Davis were to show that there was intentional or reckless conduct and a causal connection, Davis fails to meet the high burden of "extreme and outrageous" conduct and "severe" emotional distress. Extreme and outrageous conduct has been defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Lasater v. Guttman*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010) (quoting Restatement

(Second) of Torts § 46 cmt. d (1965)).

The test to find the severity of the emotional distress is a stringent test in Maryland. The

elements of severe emotional distress must be pled with particularity. *Arbabi v. Fred Meyers,*

*Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002). Even when the plaintiff in *Takacs* stated she

suffered from "debilitating conditions, including 'severe depression, anxiety, sleeplessness,

headaches and [being] sick to her stomach," the court found this insufficient to plead severe

emotional distress because "she did not allege an inability to function on a daily basis." *Takacs*,

473 F. Supp. 2d at 652. The emotional distress must be shown to be so severe that it is beyond

what a "reasonable man could be expected to endure." *Takacs*, 473 F. Supp. 2d at 652 (quoting

*Harris v. Jones*, 281 Md. at 572, 380 A.2d at 616). Davis here has done no more than allege that

she has severe distress. Without sufficient pleadings, there can be no finding of intentional

infliction of emotional distress and this count must fail for lack of sufficient claims to entitle her

to relief.

### C. DAVIS FAILS TO SUFFICIENTLY ALLEGE ACTUAL MALICE TO SUPPORT A PUNITIVE DAMAGES CLAIM

TMCC had the right to repossess the Vehicle and there was no "actual malice" shown in

the repossession of the Vehicle or between Davis and TMCC. Even if there are sufficient facts to

support a tort claim, this does "not necessarily entitle a plaintiff to a punitive damages award."

*Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000, 1003 (1997). In the case at bar, Davis has not

only failed to state claims upon which relief can be granted and sufficiently establish the

necessary agency relationship to substantiate their claims against TMCC, but they have further

failed to allege sufficient facts showing TMCC exhibited "actual malice" to support a claim for

punitive damages. This Court has described the Maryland Court of Appeals holding on this issue, as follows:

> While the *Smith* Court acknowledged the availability of punitive damages in automobile tort cases, it cautioned that a complaint seeking exemplary damages must set forth facts which demonstrate the defendant's wanton or reckless disregard for human life. Finding that bald or conclusory allegations of recklessness were insufficient to state a claim for punitive damages, the Court of Appeals stated:
>
> [s]ince we recognize that the adoption of such a rule frequently tends to appear invitational, a caveat is in order concerning the pleading and proof requirements which we shall impose in future cases. As we shall note later, the allegations relied upon here by plaintiffs are set forth in considerable detail in the complaint. Such particularity may well serve as a benchmark for pleading a case of exemplary damages, at least in motor vehicle cases. No bald or conclusory allegations of "wanton or reckless disregard for human life," or language of similar import, shall withstand attack on grounds of insufficiency.
> *Smith,* 297 A.2d at 732.

*Kandel v. Smoker,* 783 F. Supp. 948, 950, 1991 WL 316927 (D. Md. 1991).  Here, Davis's sole allegations from which malice can be inferred are, as follows: Complaint ¶ 61, 70, 89, 94, 98. These bald allegations are insufficient for Davis to carry her burden in pleading punitive damages.

Maryland requires that "facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence." *Id.* Actual malice has been defined as "ill will, fraud, intent to injure, or other *mens rea* exhibiting an evil motive or purpose." *See Montgomery Ward v. Wilson*, 339 Md. 701, 728-729 n. 5, 664 A.2d 916, 929-930 n. 5 (1995). Plaintiff may not recover punitive damages based on "'implied malice,'… in the sense of inferring malice from an element of the tort." *Montgomery Ward*, 339 Md. at 728-729 n. 5, 734-735, 664 A.2d at 929-930 n. 5, 932-933; *see also Bowden v. Caldor, Inc.,* 350 Md. 4, 23, 710 A.2d 267, 276 (1998).

Even if the tort from which punitive damages would arise "may be proven by a mere preponderance, the evidence [to] support the punitive damages claim must be subjected to the more stringent 'clear and convincing' standard." *Scott v. Jenkins*, 345 Md. at 33, 690 A.2d at 1006. Davis has failed to allege that there was any "actual malice" between herself and TMCC that would allow for the recovery of punitive damages. TMCC is not liable for any of Moor's alleged conduct that would allow for punitive damages, if any, as Moor was acting as an independent contractor. If the Court finds that C.A.R.S. and Moor are agents of TMCC, any alleged actions by Moor, conducted with "actual malice" during the justified repossession, are so outside the scope of his employment that it precludes TMCC from liability and therefore punitive damages as to TMCC should not be allowed.

Davis has failed to allege actual malice with any degree of specificity aside from the broad allegations that Defendant's actions were "conducted intentionally, maliciously, or with reckless disregard" or Moor's conduct was conducted "with actual malice." *See* Complaint ¶ 61, 70, 89, 94, 98. Davis further omits this allegation of malicious conduct from Counts Three, Four, Six, and Nine, yet requests punitive damages on all Counts. With no specificity in the claims that any alleged conduct was conducted with "actual malice" by TMCC, and a lack of an agency relationship between Moor, C.A.R.S, and TMCC, there can be no basis for the recovery of punitive damages against TMCC.

## **CONCLUSION**

Davis has failed to plead sufficient facts to state claims upon which relief can be granted for all Counts One through Nine. Furthermore, TMCC is precluded from liability on all counts for lack of an agency relationship with C.A.R.S. and its employee, Moor. Counts One and Seven are also time-barred due to the timing of this action.

**WHEREFORE**, for the abovementioned reasons, Defendant Toyota Motor Credit Corporation, respectfully requests this Honorable Court to grant their Motion to Dismiss for Failure to State a Claim upon which Relief Can be Granted, and grant any such other and further relief to which the Defendant may be justly entitled.

Respectfully submitted,

COUNCIL, BARADEL,
KOSMERL & NOLAN, P.A.


     /s/    Michael N. Russo, Jr
Michael N. Russo, Jr. (Fed Bar. No. 07322)
Matthew J. Bernhardt (Fed Bar. No. 18947)
125 West Street, Fourth Floor
Annapolis, Maryland 21401
(410) 268-6600
(410) 269-8409 fax
Email: Russo@CouncilBaradel.com
Email: Bernhardt@CouncilBaradel.com
*Attorneys for Defendant,*
*Toyota Motor Credit Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 7th day of October, 2016, a true and correct copy of the foregoing paper was filed with the Clerk of this Court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Cory L. Zajdel, Esq. (Fed. Bar No. 28191)
ZLaw
2345 York Road, Suite #B-13
Timonium, MD 21093
*Attorneys for Plaintiff,*
*Michelle Davis*

David Ellin (Fed. Bar No. 25128)
Law Office of David Ellin P.C.
154 Westminster Pike
Reisterstown, MD 21136
*Attorneys for Plaintiff,*
*Michelle Davis*

Additionally, the foregoing Motion to Dismiss, Memorandum in Support thereof, and Proposed Order were mailed, first class postage prepaid, to:


Complete Auto Recovery Services, Inc.
D/B/A/ C.A.R.S.
432-441 Wilson Highway
P.O. Box 901
Millsboro, DE 19966
*Pro Se Party*

Stewart Gray
441 Wilson Highway
P.O. Box 901
Millsboro, DE 19966
*Pro Se Party*

Donald Gray
441 Wilson Highway
P.O. Box 901
Millsboro, DE 19966
*Pro Se Party*


                    */s/    Michael N. Russo, Jr.*
                    Michael N. Russo, Jr.