**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MICHELLE DAVIS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-16-3079 |
| TOYOTA MOTOR CREDIT CORP. *et al.*, | * | |
| Defendants | * | |

## **MEMORANDUM**

### *I. Background*

In a nine-count complaint, Plaintiff Michelle Davis alleged Defendants Toyota Motor Credit Corporation ("TMCC"), Complete Auto Recovery Services, Inc. d/b/a C.A.R.S. ("C.A.R.S"), Stewart Gray, and Donald Gray committed various violations of Maryland statutory and common law in relation to the repossession of an automobile. (Compl., ECF No. 1.) Davis sought actual damages, statutory remedies, and punitive damages. (*Id.* Prayer for Relief.) Following TMCC's motion to dismiss for failure to state a claim (Mot. Dismiss, ECF No. 3), Davis filed an amended complaint against the same Defendants (Am. Compl., ECF No. 7).

In the amended complaint, Davis brings the following counts:

- Count I – Breach of Peace in Seizing the Vehicle (All Defendants)
- Count II – Conversion (All Defendants)
- Count III – Violation of Credit Grantor's Closed End Credit Provisions (TMCC)
- Count IV – Violation of Maryland Consumer Debt Collection Act (All Defendants)
- Count V – Violation of the Maryland Consumer Protection Act (All Defendants)

- Count VI – Trespass to Chattels (All Defendants)
- Count VII – Trespass (All Defendants)
- Count VIII – Battery (All Defendants)

C.A.R.S., Stewart Gray, and Donald Gray (collectively, "C.A.R.S. Defendants") filed an answer to Davis's complaint. (ECF No. 9.) In response, Davis filed a motion to strike the C.A.R.S. Defendants' affirmative defenses. (ECF No. 11.) TMCC then filed a second motion to dismiss that retained all relevant arguments from its first motion to dismiss and provided argument on the new count of trespass in the amended complaint. (2d Mot. Dismiss, ECF No. 14.) The various motions have been briefed (ECF Nos. 8, 13, 15, 17, 18), and no hearing is required, Local Rule 105.6 (D. Md. 2016). TMCC's motions will be granted, and Davis's motion to strike will be denied. The Court will first address TMCC's motions to dismiss.

## II. Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to

dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. *Allegations of the Complaint*

Davis resides in Wicomico County, Maryland. (Am. Compl. ¶ 1.) On or about November 1, 2012, Davis entered into a Retail Installment Sale Contract ("RISC") with Pohanka TM Inc. in Salisbury, Maryland, to finance a 2012 Toyota Camry. (*Id.* ¶ 23.) Pohanka TM Inc. later assigned its interest in the vehicle to TMCC. (*Id.* ¶ 25.) Davis was required to make monthly installment payments of $749.40 for sixty months beginning on December 16, 2012. (*Id.* ¶ 26.) TMCC acquired a security interest in the vehicle. (*Id.* ¶ 27.) The RISC elected the Maryland Credit Grantors Closed End Credit Provisions ("CLEC") to govern the relationship between the parties. (*Id.* ¶ 28.) TMCC concluded Davis was behind on her payments under the RISC and, as a result, "TMCC hired C.A.R.S. to repossess the vehicle." (*Id.* ¶ 29.)

On or about October 21, 2013, "in response to . . . TMCC's request, [Charles] Moor, as employee and/or agent of C.A.R.S. went to . . . Davis' home [in Salisbury] . . . to repossess Plaintiff's vehicle," which was parked in the driveway of Davis's home. (*Id.* ¶¶ 30-31.) Moor was driving a tow truck, which he placed in reverse gear and backed into Davis's driveway. (*Id.* ¶¶ 32-33.) "Moor failed to stop his tow truck in time and crashed into the rear end of the vehicle . . . ." (*Id.* ¶ 34.) After hearing a loud noise, Davis exited her house and saw the damage the tow truck had caused to the vehicle. (*Id.* ¶ 36.) "Davis was squatting in the grass in her front yard when she was approached by Moor[, who] . . . began screaming obscenities at Davis while walking across Davis' front yard." (*Id.* ¶¶ 38-39.) "Moor began striking Davis on her body with a red object that appeared to be a metal pipe." (*Id.* ¶ 40.) "Moor struck Davis several times on her body with the object[, causing] . . . Davis to fall down to the ground." (*Id.* ¶¶ 41-42.) "Davis

3

screamed in pain for help while Moor was attacking her." (*Id.* ¶ 43.) She "maneuvered away from Moor and stood up on her feet[, but o]n two different occasions, Moor pushed Davis back down onto the ground"; on one of those occasions, "Moor pushed Davis down onto a brick border and struck her head violently against it." (*Id.* ¶¶ 44-46.)

"Upon seeing Davis' brother exit the house and approach the vehicle, Moor ran away down the street . . . ." (*Id.* ¶ 47.) A few minutes later, "while Davis was being treated for medical injuries, Defendant Stewart Gray arrived at Davis' house to complete the repossession"; he "took the keys to the vehicle, unlocked the vehicle, turned the vehicle on and drove the vehicle out of Davis' driveway and onto the street." (*Id.* ¶¶ 48-49.) "Moor arrived back to Davis' house and hooked up the vehicle to C.A.R.S. tow truck and drove the vehicle away from Davis' house." (*Id.* ¶ 50.)

Davis claims she was caused pain and injuries to her back, neck, head, left arm, and left leg, and she was in fear for her life. (*Id.* ¶ 52-53.) Davis claims the repossession was witnessed by her brother and her neighbors, which caused her "serious embarrassment, humiliation, and distress." (*Id.* ¶ 54.) She alleges she was deprived of her property and her income. (*Id.* ¶ 55.)

## IV. *Analysis of TMCC's Motions to Dismiss*

### A. *Count I – "Breach of Peace in Seizing the Vehicle"*

TMCC rightly challenges the existence of a tort called "breach of peace in seizing the vehicle." Davis claims that the tort of "breach of the peace" was recognized a long time ago in the Maryland case of *Maddran v. Mullendore*, 111 A.2d 608 (Md. 1955). (Pl.'s Opp'n 10, ECF No. 8.) But the Court has studied that case and found nowhere in it recognition of any such tort. The reference to breach of the peace in the *Maddran* opinion is in the context of the criminal law, in which the offense of breach of the peace is embodied. *See* 111 A.2d at 611. *See also*

*Wanzer v. State*, 97 A.2d 914, 917-18 (Md. 1953) (referring to breach of the peace as a misdemeanor). After diligent research in Maryland law, the Court has been unable to find any Maryland authority for a tort called "breach of the peace." TMCC's motion will be granted as to Count I. Because this ruling is equally applicable to the other Defendants, the Court will dismiss Count I in its entirety.

### B. Count II – Conversion, and Count VI – Trespass to Chattel

Davis claims that repossession of the vehicle without her consent "after a breach of the peace constituted a wrongful taking and conversion of the vehicle." (Am. Compl. ¶ 64.) She also claims that TMCC and the other Defendants were not licensed in Maryland as collection agencies "or as [entities] qualified to repossess motor vehicles." (*Id.* ¶ 66.) Thus, she alleges that the repossession was wrongful such that she was deprived of her rightful possession of the vehicle. (*Id.* ¶¶ 68-69.) These same allegations underlie her claim of trespass to chattel. (*Id.* ¶¶ 90-92.)

TMCC contends that since it was entitled to repossess the car—an inference supported by Davis's complaint allegations—no *wrongful* taking could have occurred. (TMCC's Mot. Dismiss Supp. Mem. 8-9, ECF No. 3-1.) Both of the torts at issue here, conversion and trespass to chattel, include as an element the wrongful exercise of dominion over property when inconsistent with another's right of control of the property; the difference between the torts is one of degree. *Staub v. Staub*, 376 A.2d 1129, 1132-33 (Md. Ct. Spec. App. 1977). *See also Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208-09 (Md. 1985).

As Davis's complaint alleges, her sales contract was governed by Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"). (Am. Compl. ¶ 28.) Under that statute, "[a] credit grantor may repossess tangible personal property securing a loan under an agreement,

5

note, or other evidence of the loan if the consumer borrower is in default." Md. Code Ann., Com. Law § 12-1021 (West 2017). It is undisputed that Davis was in default. Thus, TMCC was within its rights to repossess the car. Davis's attempt to argue that a rightful repossession somehow becomes a wrongful repossession—and, therefore, an actionable tort—if either a breach of the peace occurs or a statute's requirements are not followed, fails. She cites no Maryland authority for this proposition, and the Court knows of none. The authorities she cites are neither precedential nor persuasive. TMCC's motion to dismiss will be granted as to Counts II and VI. Consistent with the ruling as to Count I, Count II and Count VI will be dismissed as to all Defendants.

### C. Count III – Violation of Credit Grantor Closed End Credit Provisions

In this count, which is asserted only against TMCC, Davis claims that TMCC used force and violated the criminal law in repossessing Davis's car and, therefore, violated CLEC. (Am. Compl. ¶¶ 74, 76.) Since the statute, CLEC, states that a credit grantor may repossess tangible personal property from a consumer borrower only by legal process or self-help, without use of force, and since CLEC also says, "Nothing in this section authorizes a violation of criminal law," Md. Code Ann., Com. Law § 12-1021(a)(2), (b), Davis claims TMCC violated CLEC and, therefore, "was not entitled to collect 'any interest, costs, fees, or other charges with respect to the loan.'" (Am. Compl. ¶ 76.) Additionally, Davis alleges "TMCC is required to forfeit back to Davis three time[s] 'the amount of interest, fees, and charges collected' on the loan." (*Id.* ¶ 77.)

TMCC contends that the repossessor in this case was an independent contractor, and the general rule in Maryland is that one is not responsible for the tortious conduct of an independent contractor. (TMCC's Mot. Dismiss Supp. Mem. 5-7.) The Court notes Davis's opposition itself refers to TMCC as having "contracted with C.A.R.S. to repossess the motor vehicle." (Pl.'s

6

Opp'n 2.) Yet, Davis argues that TMCC and C.A.R.S. had a principal-agent relationship and, further, that it is premature to consider whether an agency relationship existed between the parties because no discovery has occurred, and the issue is one of fact for the jury to determine. (*Id.* 4.) Davis misses the point of the Court's analysis, which is to determine whether she has alleged sufficient factual matter to entitle her to relief. In its analysis, the Court looks only to the allegations of the complaint; it does not anticipate what evidence may emerge in the course of discovery.

> In Maryland,
>
> [a] plaintiff, who alleges that his injury was caused by the defendant's servant, must prove (1) that the relation of master and servant existed between the defendant and the person who caused the injury, and (2) that the servant was acting within the scope of his employment or under express or implied authorization from the master.

*Globe Indem. Co. v. Victill Corp.*, 119 A.2d 423, 428 (Md. 1956). *See also Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship*, 36 A.3d 985, 1003 (Md. Ct. Spec. App. 2012) ("For a principal to be liable for the tortious acts of its agent, the relationship must be one of master and servant, and the servant must be acting in the scope of the agency agreement."), *aff'd in part and rev'd in part on other grounds*, 60 A.3d 1 (Md. 2013).

Davis, in alleging that TMCC is responsible for C.A.R.S.'s and/or Moor's actions, is "required to allege facts to satisfy the elements of" the principal-agent relationship. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (plaintiff was required to state facts to satisfy elements of her cause of action), *cert. denied*, 136 S. Ct. 1162 (2016). She has not done so. The only factual allegations that bear upon the relationship between TMCC and the other parties are the following:

7

Defendant Toyota Motor Credit Corporation . . . is a company principally engaged in the business of financing motor vehicles and has its principal place of business . . . [in] Torrance, [California] . . . . (Am. Compl. ¶ 2.)

Defendant [C.A.R.S.] . . . is a company principally engaged in the business of repossessing vehicles and other property and has its principal place of business [in] Millsboro, [Delaware] . . . . (*Id.* ¶ 5.)

On information and belief, Defendants Stewart Gray and Donald Gray are residents of Delaware and own and operate C.A.R.S. (*Id.* ¶ 11.)

Charles Moor . . . is an agent and/or employee of C.A.R.S., Inc. or was an agent and/or employee of C.A.R.S., Inc. when Plaintiff's vehicle was repossessed. Moor's main job responsibility with C.A.R.S., Inc. was the repossession of vehicles. Moor currently resides in Salisbury, Maryland. (*Id.* ¶ 17.)[1]

TMCC determined that Plaintiff Davis was behind on her repayment obligation and Defendant TMCC hired C.A.R.S. to repossess the vehicle from Plaintiff Davis. (*Id.* ¶ 29.)

On or about October 21, 2013, in response to Defendant TMCC's request, Moor, as employee and/or agent of C.A.R.S. went to Plaintiff Davis' home [in] Salisbury . . . to repossess Plaintiff's vehicle. (*Id.* ¶ 30.)

The only plausible inference from those few allegations is that C.A.R.S. was an independent contractor who may have employed Moor. "An independent contractor is 'one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result.'" *Kersten v. Van Grack, Axelson & Williamowsky, P.C.*, 608 A.2d 1270, 1272 (Md. Ct. Spec. App. 1992). As TMCC correctly states, "the general rule [is] that an employer of an independent contractor is not vicariously liable for the conduct of the contractor." *Id.* Stated differently, a principal is not liable for physical injury caused by his agent, "who is not a servant, during the performance of the principal's business, unless the act was done in the manner authorized or directed by the principal, or the result was one authorized or intended by the principal." *Globe Indem.*, 119 A.2d at 427.

---

[1] Charles Moor has not been sued in this case.

"[T]he decisive factor in determining the existence of a master-servant relationship is the level of control that the principal exerts over the agent." *Columbia Town*, 36 A.3d at 1004. Davis has failed to allege factual matter to permit a reasonable inference that TMCC exercised *any* control over anyone connected with the repossession. Moreover, Davis has not alleged facts indicating that C.A.R.S., Stewart Gray, Donald Gray, or Moor had any "power to alter the legal relations of the principal." *See Green v. H&R Block*, 735 A.2d 1039, 1048 (Md. 1999) (citing "the agent's power to alter the legal relations of the principal" as having "particular relevance" to determination of existence of principal-agent relationship). Although the general rule against holding a contractee liable for an independent contractor's actions has limited exceptions, *see, e.g.*, *Assocs. Discount Corp. v. Hillary*, 278 A.2d 592, 596-97 (Md. 1971) (contractee directed actions of independent contractor in repossession of automobile and later ratified actions; therefore, contractee was liable for contractor's damage to property), Davis has provided neither allegations nor argument to overcome the general rule.

Because Davis's complaint fails to provide sufficient factual matter to allow an inference that C.A.R.S., Stewart Gray, Donald Gray, or Moor was an agent of TMCC or that TMCC directed or ratified the allegedly tortious actions taken by C.A.R.S. or Moor during the course of repossession, the Court concludes that any tortious conduct allegedly attributable to them cannot serve as a basis for liability against TMCC. Consequently, TMCC's motion will be granted as to Count III, which will be dismissed.

### D. Count IV – Violation of Maryland Consumer Debt Collection Act

Davis's next count alleges that TMCC and the other Defendants violated the Maryland Consumer Debt Collection Act ("MCDCA"). She relies on the provision that prohibits a "collector," while collecting or attempting to collect a debt, from using or threatening force or

9

violence. (Am. Compl. ¶ 79 (citing Md. Code Ann., Com. Law § 14-202(1)).) Although the Court concludes that Davis's only allegations of force or violence are not a basis for liability against TMCC because of the lack of a principal-agent relationship, *see* IV C, *supra*, this count also fails because the mere act of repossessing property does not satisfy the statutory definition of collecting or attempting to collect a debt within the meaning of the MCDCA.

Under the MCDCA, "collector" carries the following definition: "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Com. Law § 14-201(b). "Consumer transaction" is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id.* § 14-201(c). In a different part of the Maryland Code, the term "collection agency" is defined as "a person who engages directly or indirectly in the business of collecting for, or soliciting from another, a consumer claim." Md. Code Ann., Bus. Reg. § 7-101(c)(1)(i). The term "consumer claim" is then defined as "a claim that is for money owed or said to be owed by a resident of the State and arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services." *Id.* § 7-101(e). Although "debt" as used in Commercial Law § 14-202(1) is not defined, it is not unreasonable to draw from Business Regulation § 7-101(c)(1)(i) the definition of "consumer claim" and thereby infer "debt" to mean a money obligation arising from a consumer transaction.

When applying these definitions to the instant case, it is obvious that the debt owed by Davis to TMCC falls within the definition of "debt" as used in Commercial Law § 14-202(1). However, the repossession of the vehicle at issue here was neither the collection of Davis's debt nor an attempt to collect it. It was the enforcement of a security interest, which is defined as "an

interest in personal property or fixtures that secures payment or performance of an obligation." Com. Law § 1-201(b)(35). *See Khepera-Bey v. Santander Consumer USA, Inc.*, Civ. No. WDQ-11-1269, 2012 WL 1965444, at *9 (D. Md. May 30, 2012) ("A recovery company, which enforces a collector's security interests, is not a debt collector because enforcing a security interest is not collecting a debt, and the recovery company generally does not have an interest in the debt (or the personal property; it is acting on behalf of the collector or creditor).").

To the extent Davis's complaint may be read to claim that TMCC and the other Defendants violated the MCDCA because they were not licensed as collection agencies, but should have been, or because an alleged use or threat of force or violence occurred, the Court finds her argument foreclosed; in short, mere repossession does not fall within the activity regulated by Maryland's laws governing collectors or collection agencies. For those reasons, Count IV fails to state a claim for relief, and TMCC's motion will be granted. As before, this ruling applies equally to the other Defendants. Consequently, Count IV will be dismissed in its entirety.

### E. Count V – *Violation of the Maryland Consumer Protection Act*

Davis's Count V alleges a violation of the Maryland Consumer Protection Act ("MCPA") based upon Count IV's allegation of violation of the MCDCA. (Am. Compl. ¶¶ 86-87.) Since Count IV fails to state a claim for relief, Count V also fails to state a claim for relief. TMCC's motion will be granted as to this count as well, and the count will be dismissed as to all Defendants.

### F. Count VII – *Trespass*

In this count, Davis alleges that TMCC and the other Defendants, without authority or justification, intentionally entered onto her real property without permission and interfered with

her possession and enjoyment of her real property. (*Id.* ¶¶ 94-95.) As earlier noted, the RISC was governed by CLEC, which grants a right of repossession to a lender upon the borrower's default. Com. Law § 12-1021(a)(1). A precursor of this statute was interpreted by the Maryland Court of Appeals as also granting a right to the lender to enter upon private property to effectuate the repossession. *Hillary*, 279 A.2d at 596 (construing Md. Code, Art. 83, § 141(a) (1969 Repl. Vol.)). Thus, Maryland law is clear that the entry onto her property was committed *with* authority and justification, contrary to her allegations. By force of law, the repossessors had permission to enter onto her real property. Davis's argument otherwise is premised upon the same nonprecedential and unpersuasive authorities cited by her in relation to the trespass to chattel count. (Pl.'s Opp'n (Am. Compl.) 1, ECF No. 15.) She also, without citation to any authority, contends TMCC could not provide either C.A.R.S. or Moor the right to enter onto her property or the right to take possession of her property. (Pl.'s Opp'n 8, ECF No. 8.) If her contention were the state of Maryland law, then surely a case would exist to support her proposition (the Court has found none), but given the apparently long-accepted practice for a lender to contract with a repossessor to effectuate a repossession, *see, e.g.*, *Hillary*, 278 A.2d 592, her contention is without merit.

It is true that CLEC does not authorize a violation of the criminal law or the use of force to repossess tangible personal property, but that statute does not negate the mere right of entry onto private property to accomplish the repossession. Simply entering onto private property for the purpose of repossession constitutes neither a violation of criminal law nor the use of force. In other words, a lawful entry onto private property does not become a trespass to real property, and, therefore, an actionable tort, because of the occurrence of either a breach of the peace or the use of force *after* the entry. In addition, Davis has not alleged any physical damage to her

property. She has vaguely referred to her right of enjoyment in her real property, but that right was circumscribed by the right of the repossessors to enter her property to effectuate repossession. The Court concludes Count VII fails to state a claim for relief and will be dismissed as to all Defendants.

### G. Count VIII – Battery

This is the one count that survives, but not against TMCC. Davis's complaint plausibly alleges Moor committed a battery upon her, and it plausibly alleges Moor was either the employee or agent of C.A.R.S. However, without a viable principal-agent relationship between TMCC and either C.A.R.S. or Moor, no basis exists for imputing liability for their actions to TMCC. Thus, as to TMCC, Count VIII fails to state a claim for relief and will be dismissed. TMCC will be dismissed from the case.

## V. Analysis of Plaintiff's Motion to Strike Affirmative Defenses

For the reasons stated by the Court in *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385 (D. Md. 2014), and, subsequently, in *Baron v. DIRECTV, LLC*, Civ. No. JKB-16-3145, 2017 WL 68688, 2017 U.S. Dist. LEXIS 1936 (D. Md. Jan. 5, 2017), the Court declines to strike the C.A.R.S. Defendants' affirmative defenses based upon Davis's argument that they do not satisfy the pleading standard of Federal Rule of Civil Procedure 8(a), as construed by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Beyond Davis's broad-sweep argument to strike all of Defendants' affirmative defenses under the *Iqbal-Twombly* standard, she also argues that certain affirmative defenses—contributory negligence, statute of limitations, collateral estoppel, illegality, and waiver—are irrelevant and unsupported and, thus, should be stricken. Rule 12(f) permits a court to "strike

from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Fourth Circuit has stated,

> Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed.1990). Nevertheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.* § 1381 at 665.

*Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). In *Waste Management*, the Court affirmed the district court's decision to grant a Rule 12(f) motion and to strike an affirmative defense that had no legal precedent in the context of that case.

The Court has considered Davis's arguments (Pl.'s Mot. Strike, ECF No. 11) and those by the C.A.R.S. Defendants (C.A.R.S.' Opp'n, ECF No. 17) with regard to the five defenses contested by Davis. The Court will deny the motion as to the five defenses for the reasons stated in the opposition.

## *VI. Conclusion*

Davis has failed to state a claim as to Counts I through VII as to all Defendants, and she has failed to state a claim as to TMCC in Count VIII. By separate order, the Court will grant TMCC's motions to dismiss. Davis's motion to strike will be denied.

DATED this 17th day of April, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge