IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MICHELLE DAVIS,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-16-3079 |
| **COMPLETE AUTO RECOVERY SERVICES, INC.,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

On September 6, 2016, Plaintiff Michelle Davis filed suit contending that Charles Moor violently attacked her when he repossessed her car in 2013. Plaintiff did not sue Moor, but instead sued the entity that employed Moor, Complete Auto Recovery Services ("CARS"), as well as two CARS shareholders, Stewart and Donald Gray ("Defendants").[1] (*See* Am. Compl., ECF No. 7.) The only claim to survive the motion to dismiss stage was a battery claim. (Mot. Dismiss Mem. Op., ECF No. 19.)

After a contentious period of discovery, Defendants moved for summary judgment. (M.S.J., ECF No. 89.) On February 5, 2020, the Court granted Defendants' motion for summary judgment. (M.S.J. Mem. Op., ECF No. 96.) Plaintiff then filed a Motion to Alter/Amend Judgment, which is now pending before the Court. (Mot. Alter/Amend, ECF No. 98.) The motion is fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). The Court will deny Plaintiff's motion.

---

[1] Plaintiff also initially brought suit against Toyota Motor Credit Corporation, but the entity was dismissed at the motion to dismiss stage. (ECF Nos. 19, 20.)

I.      **Factual and Procedural Background**

The factual background in this case is laid out in the Court's prior opinions. (*See* M.S.J. Mem. Op.) Most relevant to the motion currently pending before the Court is that on July 26, 2019, Defendants moved for summary judgment. Defendants argued they were entitled to summary judgment for two reasons: (1) even if the alleged battery did occur, Defendants could not be liable as a matter of law because the alleged battery was not within the scope of Moor's employment, and (2) even if CARS was somehow liable for the battery, Stewart and Donald Gray could not personally be liable because the corporate veil of CARS could not be pierced. (M.S.J. at 6–11.) Plaintiff opposed the motion. (Opp'n M.S.J., ECF No. 92.) Plaintiff contended that both of Defendants' theories were incorrect, and further contended that even if Moor's conduct was outside the scope of employment, Defendants could still be liable under Md. Code Ann., Corps. & Ass'ns § 4A-301.1 because Defendants were "negligent in appointing, supervising, and cooperating with Charles Moor." (*Id.* at 3.) Defendants filed a reply, but the brief was almost a verbatim copy of their opening brief and did not address Plaintiff's argument regarding § 4A-301.1. (Reply, ECF No. 95.)

The summary judgment record was relatively thin—it consisted of the order authorizing the repossession of Plaintiff's car (M.S.J. at 12), a certificate showing that CARS was licensed to do business in the state of Maryland from 1996-2011 (Opp'n M.S.J. Ex. 3, ECF No. 92-3), and the depositions of Charles Moor and Stewart Gray.[2] Based on this record, the Court granted Defendants' motion for summary judgment. (M.S.J. Mem. Op.) The Court explained that none of the evidence in the record suggested a battery occurred—Charles Moor and Stewart Gray both

---

[2] The parties only filed brief excerpts of these depositions on ECF. (M.S.J. at 13–15; Opp'n M.S.J. Ex. 1 and 2, ECF No. 92-3.) Complete copies of both depositions were, however, provided in hard copy to chambers and the Court will cite to portions of those depositions throughout this opinion.

2

denied in their depositions that the battery occurred and the two other documents in the record offered no proof of a battery. (*Id.* at 3–4.) The Court also noted, however, that even if a battery had occurred, no reasonable jury could conclude the battery was within the scope of Moor's employment, so Defendants could not be liable under Plaintiff's primary theory of liability. (*Id.*)

After the Court issued its ruling, Plaintiff filed a motion to alter or amend the judgment. (Mot. Alter/Amend.) Plaintiff argued that the Court should not have based its ruling on the lack of evidence of a battery because Defendants did not explicitly move for summary judgment on the grounds of insufficient evidence of a battery. (*Id.* at 1–2.) Although, as Plaintiff notes, a court can grant summary judgment under Federal Rule of Civil Procedure 56 on grounds not explicitly raised by a party, Plaintiff contends a court should only do so when the parties have "fair and adequate notice" that such action may be taken. (*Id.* at 2.) Plaintiff contends she lacked that notice here. (*Id.*) Along with her motion, she submits a copy of her deposition as well as answers to interrogatories, in which she states under oath that a battery occurred. (Interrogatories and Deposition, ECF No. 98-2.) She contends this additional evidence creates a genuine dispute of material fact as to whether a battery occurred, and the Court should therefore reconsider its summary judgment decision. (Mot. Alter/Amend at 2.)

Plaintiff's argument that she did not have adequate notice that she was expected to produce evidence of the alleged battery is dubious. The primary issue raised in the summary judgment briefing was whether the alleged battery occurred in the scope of Moor's employment. As explained more fully below, this scope of employment analysis requires a court to consider the facts surrounding the alleged battery and determine whether the conduct was of the type that had been authorized by the employer. The facts relating to the battery, in other words, are key to the analysis, and it seems reasonable to expect Plaintiff would know she was expected to produce

them.  Additionally, it seems reasonable to expect Plaintiff would be on notice that she was expected to produce evidence of a battery for the very simple reason that this case involves only one claim—*battery*—and Defendants had moved for summary judgment on that claim.

Nevertheless, in the interests of resolving this case definitively and without ambiguity, the Court will assume *arguendo* that Plaintiff did not have sufficient notice that she was expected to produce evidence of a battery.  Further, the Court will assume *arguendo* that there is a genuine dispute of material fact as to whether a battery occurred, and the Court will consider whether Defendants are nevertheless entitled to summary judgment.

## *II.     Analysis*

Plaintiff argues that the Court should have denied Defendants summary judgment because a reasonable jury could conclude that Defendants are liable under two different theories: (1) Defendants are vicariously liable for Moor's conduct because Moor committed the alleged battery within the scope of his employment, and (2) Defendants are liable under Md. Code Ann., Corps. & Ass'ns § 4A-301.1 because Defendants were negligent in "appointing, supervising, and cooperating with Moor." (Opp'n M.S.J. at 2–4.) The Court addresses these arguments in turn.[3]

### *A.  Vicarious Liability*

Plaintiff cannot prevail under her vicarious liability theory because no reasonable jury could find that Moor was acting within the scope of his employment when he committed the alleged battery.[4]  The Court concluded this in its prior opinion, but because Plaintiff reiterates this argument in her Motion to Alter/Amend Judgment, the Court will expand on its explanation here.

---

[3] At issue in the briefing was also whether the corporate veil of CARS could in fact be pierced, but the Court need not address this argument because, as explained below, there is no genuine dispute as to whether CARS is liable under either of these theories.

[4] The Court notes that both parties in this case refer to Charles Moor as an employee of CARS, and not an independent contractor. (M.S.J. at 10; Opp'n M.S.J. at 2.)  The Court is not entirely convinced the evidence in the record supports

4

Under Maryland law, an employer can be "vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship." *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995). The test for determining if an employee's tortious acts were within the scope of his employment "is whether [the acts] were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). Even if an employee's conduct was not explicitly "authorized" by their employer, "an employee's unauthorized conduct might fall within the scope of employment if it was of the same general nature as conduct that was authorized or incidental to that conduct." *Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 706 A.2d 659, 668 (Md. Ct. Spec. App. 1998). Where an employee's conduct is "personal" or where it is "unprovoked, highly unusual, and quite outrageous," the conduct tends to fall outside the scope of employment. *Sawyer*, 587 A.2d at 471 (citing *Prosser and Keeton On The Law Of Torts* § 70 (5th ed. 1984)).

Here, Plaintiff describes a brutal and unprovoked attack. According to Plaintiff, when Moor arrived at her home to complete the repossession, he "began screaming obscenities" at her and "striking [her] on her body with a red object that appeared to be a metal pipe." (Amended Compl. ¶¶ 39, 40.)[5] At one point, she asserts, he "pushed [her] down onto a brick border and struck her head violently against it." (*Id.* ¶ 46.) Plaintiff contends she did nothing to provoke the violent attack. (*Id.* ¶¶ 31–51.)

---

the conclusion that Moor was an employee, but because both parties appear to agree he was, the Court will adopt their position.

[5] The Court cites to the Amended Complaint here instead of Plaintiff's deposition or interrogatory answers because the scope of employment issue was raised and litigated at the summary judgement stage and Plaintiff could have submitted these documents at that time but elected not to. The Court notes, however, that it has reviewed Plaintiffs' deposition and interrogatory answers and there is nothing in there that would change the Court's scope of employment analysis.

5

Plaintiff offers no evidence that Defendants authorized this alleged battery or that Defendants condoned this type of violent conduct generally. In fact, the limited evidence in the record suggests the opposite. With respect to this specific alleged incident, Plaintiff does not present any evidence (nor does she allege) that any individual associated with CARS directly authorized the alleged battery in advance of the incident. In fact, the repossession order stated that the repossessor (*i.e.*, Moor) should make "No Contact!!" with Plaintiff when repossessing her vehicle. (M.S.J. at 12.) With respect to whether Defendants generally condoned this type of conduct, the limited evidence in the record suggests they did not. Stewart Gray testified that CARS' policy when conducting repossessions is to "try to get the car smoothly and . . . as fast as you can, try not to have any confrontation, always be nice." (Gray Depo. at 70–71.) Accordingly, he testified that the alleged battery Plaintiff describes would have violated CARS' policy to avoid confrontations during repossessions. (*Id.* at 73:12–19.) Moor also testified that Stewart Gray trained him in how to "defus[e] a bad situation" when conducting repossessions, rather than resort to violence. (Moor Depo. at 78:2–6.) While the testimony of Gray and Moor may be self-serving, Plaintiff offers no countervailing evidence that could create a genuine issue for trial.

In sum, Plaintiff describes conduct that is "unprovoked, highly unusual, and quite outrageous", *Sawyer*, 587 A.2d at 471 (citation omitted), and she offers no evidence that Defendants directly authorized this conduct or that the conduct was "of the same general nature as conduct that was authorized" by Defendants, *Tall*, 706 A.2d at 668. This is precisely the sort of conduct that falls outside the scope of employment. *See, e.g.*, *Tall*, 706 A.2d at 671 (concluding that a teacher's act of physically striking a disabled child was outside the scope of the teacher's employment where there was no genuine dispute as to whether the employer authorized the conduct); *Jordan v. W. Distrib. Co.*, 286 F. Supp. 2d 545, 549 (D. Md. 2003), *aff'd*, 135 F. App'x

6

582 (4th Cir. 2005) (concluding that two truck drivers who drove another driver off the road, aimed a gun at him, and threatened to shoot acted outside the scope of employment where there was no allegation Defendants authorized the conduct).

Although, as Plaintiff notes, the question of whether certain conduct falls within the scope of employment is often left to a jury, it need not be where, as here, only "one reasonable inference can be drawn" from the record. *See Henderson v. AT&T Info. Sys., Inc.*, 552 A.2d 935, 941 (Md. Ct. Spec. App. 1989) (concluding at the summary judgment stage that the employee's conduct fell outside the scope of employment based on the factual record before the court).

### B. Liability Under Md. Code Ann., Corps. & Ass'ns § 4A-301.1

Plaintiff contends that even if Moor's conduct fell outside the scope of his employment, Defendants can still be held liable under Md. Code Ann., Corps. & Ass'ns § 4A-301.1. This provision provides that an individual who renders a "professional service" as an employee of an LLC can be liable for the tortious conduct of other employees of the LLC if the individual "is negligent in appointing, supervising, or cooperating with the other employee . . . ." Md. Code Ann., Corps. & Ass'ns § 4A-301.1 (West).[6]

The briefing provides little helpful guidance on if or how this statute applies. Plaintiff's entire discussion of this legal theory consists of a citation to the statute followed by several conclusory sentences that largely just restate the statute in slightly different language.[7] Defendants did not address this argument in their briefing at all.

---

[6] Because both parties refer to CARS as an LLC in their briefing, the Court will assume it is an LLC, even though there is no evidence in the record affirmatively establishing this.

[7] Plaintiff's explanation of her legal theory consists of the following:
"[T]here is ample evidence for a jury to conclude that Donald Gray and Stewart Gray and CARS were negligent in appointing, supervising and cooperating with Charles Moor. The Defendants failed to properly train, supervise and were negligent in cooperating with Charles Moor. The record shows that neither the Defendants nor Charles Moor were licensed to do repossession work in the State of Maryland. The Defendants offered no training to Charles Moor and essentially no supervision." (Opp'n M.S.J. at 3.)

7

Based on the limited record before the Court, it is difficult to definitively determine if this statute applies here. Section 4A-301 only applies to individuals who render a "professional service", which the act defines by citing the definition used in § 5-101 of the code. Section 5-101 defines a "professional service" as "a service that may lawfully be rendered only by a person licensed or otherwise authorized by a licensing unit in the State to render the service and that may not lawfully be rendered by a corporation under the Maryland General Corporation Law." Md. Code Ann., Corps. & Ass'ns § 5-101. The statute then provides a non-exhaustive list of the types of individuals who perform "professional services", which includes architects, attorneys, and various types of medical providers. *Id.*

Plaintiff does not address whether CARS provides a "professional service" within the meaning of the statute. Although Plaintiff repeatedly states that CARS was not licensed to conduct repossessions in Maryland at the time of the repossession, Plaintiff does not cite any law or regulation suggesting that CARS was required to be licensed. Both Stewart Gray and Charles Moor stated in their depositions that they did not believe CARS was required to be licensed in Maryland because CARS was licensed in Delaware and/or because Moor was personally licensed to conduct repossessions in Maryland.[8] (Moor Depo. at 92–100; Gray Depo. at 56, 62.) Plaintiff similarly cites no law or regulation suggesting that the second component of the statute is satisfied either—*i.e.*, that it is unlawful under the Maryland General Corporation Law for a corporation to conduct automobile repossessions. *See* Md. Code Ann., Corps. & Ass'ns § 5-101.

Although a defendant moving for summary judgment has the burden of showing there is no genuine dispute of material fact, a plaintiff opposing summary judgment has the burden to

---

[8] Additionally, the Court notes that it already held at the motion to dismiss stage that CARS was not required to be licensed as a collection agency under the Maryland Consumer Debt Collection Act. (*See* Mot. Dismiss Mem. Op. at 9–11.)

8

provide a coherent legal theory as to how she will recover at trial. 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2727.2 (4th ed. 2020). Plaintiff has not met that burden here. Although the Court is obligated to consider Plaintiff's argument under § 4A-301.1 because she has raised it, the Court is not obligated to attempt to fill the significant holes in this argument when Plaintiff has not attempted to do so herself. [9]

Because there is no genuine dispute as to whether Defendants are liable under either of the liability theories Plaintiff offers, Defendants are entitled to summary judgment.

### III.   Conclusion

In sum, even if there is a genuine dispute of material fact as to whether a battery occurred, Defendants are still entitled to judgment as a matter of law for the reasons set forth above. Therefore, an order shall enter denying Plaintiff's Motion to Alter/Amend Judgment.

DATED this 17th day of July, 2020.

BY THE COURT:

/s/
James K. Bredar
Chief Judge

---

[9] The Court notes that even if it was inclined to attempt to fill the gaps in Plaintiff's legal theory, it is not equipped to do so. For example, a determination as to whether CARS was required to be licensed would presumably require information about the specifics of CARS' organizational structure, the extent to which CARS was licensed in other states, the scope of its operations, etc. The record contains little of this relevant information.